By the Court,
Hitchcock, Judge.
Prom the agreed facts in this-case, it will be seen that the premises in controversy, being situate in- *65 the County of Montgomery, were sold in pursuance of an order of the Court of Common Pleas of Hamilton County, for the payment of the debts of Daniel Symmes, who died seized of those premises. And the only question raised and discussed by the counsel is, whether that court had so far jurisdiction of the subject matter as to possess the power to order such sale. It seems to be admitted, that if the court possessed the power, then there is an end of the case, and judgment must be entered for the defendant.
The position assumed by the counsel for the plaintiff, is, that the Court of Common Pleas, whether acting as a court of common law, o:f chancery, or of probate, is a court of limited local jurisdiction, and can not take cognizance of matters without or beyond that local juris ■ diction. This, to a certain extent, and as a general rule, is correct, It must exercise its jurisdiction within the appropriate county, but when that jurisdiction has been exercised, the effects are not always limited to the county, or even to tbe state. A judgment recovered in one county, if the court had jurisdiction, is conclusive of *the rights of the parties, not only in that particular county, but throughout the state and throughout the United States, and perhaps throughout the world.
The Court of Common Pleas is created by the constitution, and its jurisdiction, in part, defined by that instrument; but it is left principally to subsequent legislation to ascertain the extent of its jurisdiction, as well as the manner in which that jurisdiction shall be exercised. The first section of the third article of the constitution prescribes. that “ the judicial power of the state, both as to matter of law and equity, shall be vested in a Supreme Court, in Courts of Common Pleas for each county, in justices of the peace, and in such other courts as the legislature may, from time to time, establish.” The fifth section of the same article provides, that “ the Court of Common Pleas in each county, shall have jurisdiction of all probate and testamentary matters, granting administration, the appointment of guardians, and such other cases as shall be prescribed by law.” Acting under the constitution, the general assembly have, from time to time, passed laws regulating the practice of these courts, defining their duties and ascertaining their jurisdiction. In this legislation, however, the common law, chancery, and probate jurisdiction, has been described in different statutes. Each jurisdiction has been kept separate and distinct. To the constitution, then, and to the laws made conformably theieto, we *66 must look, in order to ascertain the extent of the jurisdiction of our several courts.
As before remarked, the Court of Common Pleas is a court of limited local jurisdiction. In other words, it must exercise its jurisdiction in its own appropriate county. But the law authorizes a change of venue, and by such change the jurisdiction is transferred to a tribunal having no original jurisdiction of the case, but which, by the change and the law under which it was made, acquires jurisdiction. And notwithstanding the locality of the jurisdiction of the Court of Common Pleas, still when a judgment is once rendered by that tribunal, that judgment may be enforced by execution issued to any other county of the state. This is not because the jurisdiction of the court is eo-extensive with the state, but because the policy of the law requires that the property of a debtor, wherever located ■within the state, should be subjected to the payment of his debts. The same reason would operate in case of insolvent estates of deceased persons. The, Court of Common Pleas of the county in which the deceased had his last place of residence, have not only jurisdiction to appoint, but it is their duty to appoint administrators on his estate. All the estate of *the decedent is made assets for the payment of his debts, the personal estate first being appropriated. The real estate can not be appropriated without .an express order of the court after having ascertained the necessity of such appropriation. How does the court acquire the jurisdiction to make this order ? Not from the fact that the land lies within the county, but from the fact that they appointed the administrator, and have a supervisory control over his actions until the estate is settled. And there certainly can be no more impropriety in permitting an order of sale to be executed in a distant county, than there is in permitting an execution issued upon a judgment of the same court sitting as a court of law, to be enforced in a distant county.
But unless, by a fair construction of the statute in force at the time this order was made, such effect can be given to it, the title of the defendant must fail.
Before proceeding to a particular examination of this statute, it may be well to refer to the case of Ludlow’s heirs v. M’Bride, 3 Ohio, 240, which is cited by the counsel for the plaintiff as an authority in point. In that case the premises in controversy were situate in Butler county, and had been sold in pursuance of an order of the Court of Common Pleas of Hamilton county, acting as a court of probate. The *67 ■court decided that the court of Hamilton county had no jurisdiction to make the order, and that the sale was consequently void. There is much similarity between the case above referred to and the case before the court; and had there been no change in the law, it would have been an authority in point. But the law in force at the time of the sale to M’Bridehas been long since repealed. This was “ alaw for the settlement of intestates’ estates,” adopted from the Pennsylvania statutes, and published June 16, 1795. In the seventh section of this law, provision is made authorizing the administrator under certain circumstances to sell the real estate of his intestate, but it is only •such real estate “ as the orphan’s court of the county, where such real ■estate lies, shall think fit to allow, order and direct, from time to time.” This law continued in force until 1805, and was then repealed. And from the first of June, of this latter year, until the first of June, 1808, there was no law in the state, subjecting real estate to sale for the payment of the debts of a decedent. Since this latter period, however, all the estate of a deceased person, with some trifling exceptions, has been assets in the hands of an administrator for the payment of the debts. Such is the policy of the law, and *in construing the several statutes on the subject, this policy should be kept in mind.
The law in force at the time the premises in controversy were sold, is the act of the 25th January, 1816, entitled “ ah act for the proving .and recording wills and codicils, defining the duties of executors and .administrators, the appointment of guardians and the distribution of insolvent estates. ” Oh. St. 929.
It is insisted by the counsel for the plaintiff, that inasmuch as there is no express provision in this, statute, that the court of Common Pleas, granting letters of administration, should have power to order the sale of real estate, situate beyond its local jurisdiction, therefore that an order so made, is coram nonjudice and void. It is true that there is no such express provision, and it is equally true, that there is •no express provision that the court shall have power to order the sale of real estate within its local jurisdiction. But there is a provision that any part or the whole of the real estate of a deceased person, ■shall be sold for the payment of his debts, if the same be necessary. Although such is the provision .of the statute, no reference is made to the locality of the estate to be sold until we al-rive at the thirty-eighth •section of the act. By this section, administrators appointed in other .states, are authorized to sell the property of their intestates, situate *68 in this state, provided such sale be necessary for the payment of debts. In such case the order of sale must be made by “ the court of Common Pleas in the county where the property lies.”
There can be no controversy but that it was the intention of the-legislature by the act of 1816, that all the estate, both real and personal, of a deceased person, should be liable to the payment of his debts, and it is equally clear that it was not their intention that real estate should be sold without an order of a court of Common Pleas. The question is what court of Common Pleas possessed the power to make the order?
The twenty-third section of the act provides “ that when any person dying intestate, shall have real or personal property to the amount of one hundred dollars, the court of Common Pleas in the county wherein such intestate had his last place of residence shall grant letters of administration.” This section unquestionably refers to the appointment of administrators upon the estates of such persons as had: died residents of the state, for.in the forty-eighth section, provision is-made for the appointment of administrators upon the estates of persons dying in other states, having property in this. But where the deceased had been a resident of this state, then *the court of Common Pleas of the county in which he had his last place of residence, had the sole jurisdiction to grant letters of administration.
Letters of administration being granted, it is next made the duty of the administrator to give bonds with sureties, to the satisfaction of' the court, and take an oath faithfully to discharge the duties of his appointment. It is further his duty to procure the personal property of the estate to be appraised, by appraisers appointed by the court, and to return a true and accurate inventory of the same, together with a schedule of the debts due the estate, so far as known, “ to the clerk’s office of said court within three months.” It is next made the duty of the administrator, provided such sale be necessary, to sell the personal property at public vendue, and “ in all cases of the sales of the-property of the deceased, return a true and accurate statement of the same, to the court or clerk’s office as aforesaid.” He is then to pay the debts of his intestate, and if there be any of the avails of the personal property remaining after the payment of all debts, the saméis to be distributed to the widow and heirs of the deceased, as prescribed in the law. Of all this return must be made to the court.
In the thirty-third section, it is provided “ that if on return made to the court, it shall appear to their satisfaction, that after deducting. *69 the widow’s wearing apparel, one bed and bedding, the expense of the last sickness, funeral charges and the cost of administration, there is not personal property sufficient to pay all the demands against said «state, they shall, after setting to the widow her dower, direct the administrator or administrators to sell so much of the real estate of the deceased as shall be sufficient to discharge all such demands, after the sales of personal property has been applied thereto, etc.” The mode of sale is then pointed out, and the court are authorized to require additional security of the administrator that the avails shall be faithfully applied.
• “ If on return made to the court.” What court is here referred to ? There can be but one answer to this question. It is the court spoken of in the preceding sections of the act. And the only court before spoken of is the court of Common Pleas of the county in which the 'intestate had his last place of residence, and which granted the letters of administration. This is the court to which the administrator must •make all his returns, from which he received his authority, and with which he must, effect his final settlement. And the same court to which return is made, is empowered to order the sale of real estate if .-such sale is necessary. And no other court but this *is referred to in the act in connection with the sale of lands, except in the thirty-eighth section before referred to. Such we take to be the clear interpretation of the act, and any other construction would defeat the intention of the legislature.
Upon the facts agreed, the law is with the defendant, and judgment must be entered accordingly.